FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Jan 12, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JACK R.,[1]

                  Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                  Defendant.

No.    4:20-cv-5178-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR PAYMENT OF BENEFITS**

       Plaintiff Jack R. appeals the Administrative Law Judge's (ALJ) finding that his disability did not begin on his alleged disability onset date but rather three years later on July 3, 2017—the date of his first appointment with a rheumatologist who diagnosed fibromyalgia. Because the ALJ improperly focused on the date that Plaintiff was first evaluated by the rheumatologist for fibromyalgia instead of finding that the medical record clearly supported Plaintiff's

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

allegation that he suffered from fibromyalgia symptoms since the alleged onset date, the ALJ erred. Accordingly, Plaintiff's Motion for Summary Judgment, ECF No. 24, is granted, the Commissioner's Motion for Summary Judgment, ECF No. 30, is denied, and this matter is remanded for payment of benefits from April 27, 2014, to July 2, 2017.

## I.    Factual and Procedural Summary

Plaintiff filed Title 2 and Title 16 applications alleging disability beginning April 27, 2014.[2] His claims were denied initially and on reconsideration.[3] As requested, administrative hearings were held in April and August 2019 before ALJ Lori Freund, who took testimony from Plaintiff about his conditions and symptoms.[4] After the hearing, the ALJ issued a partially favorable decision, finding:

- Plaintiff met the insured status requirements through December 31, 2016.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 27, 2014.

- Step two: Plaintiff had the following medically determinable severe impairments before July 3, 2017: degenerative disc disease of the

---

[2] AR 468–96.

[3] AR 313–37, 340–53.

[4] AR 87–212.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

lumbar spine, acetabular impingement and arthropathy of the pelvis, major depressive disorder, social anxiety disorder with panic features, somatic symptom disorder, and personality disorder with dependent and obsessive-compulsive traits; further, as of July 3, 2017, the additional severe impairment of fibromyalgia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- Before July 3, 2017, Plaintiff's RFC allowed light work with several exertional and nonexertional limitations. Based on this RFC, Plaintiff could not perform past relevant work, but could work as a cashier II, cleaner/housekeeper, and storage rental clerk.

- As of July 3, 2017, Plaintiff's RFC included additional exertional and nonexertional limitations that prevented him from performing work that existed in significant numbers in the national economy and therefore Plaintiff became disabled on that date.[5]

Plaintiff requested review of the ALJ's partial-disability decision by the Appeals Council, which denied review.[6] Plaintiff timely appealed to this Court.

---

[5] AR 12–39.

[6] AR 1–6.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

## II.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[7] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[8] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[10] The Court considers the entire record.[11]

---

[7] 42 U.S.C. § 405(g).

[8] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[9] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[10] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[11] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[12] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[13]

### III.    Analysis

**A.    Fibromyalgia Onset Date**

The parties disagree as to whether the ALJ's decision that Plaintiff did not suffer from fibromyalgia until July 3, 2017, is supported by substantial evidence.

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'"[14] The Commissioner has recognized that fibromyalgia is not a condition that generally presents with extensive objective findings and as such it is a challenging condition for not only the medical community to diagnosis but also for the Commissioner to assess when considering applications for disability based on this condition.[15] To provide guidance, SSR 12-2p provides two sets of diagnostic criteria for fibromyalgia: the 1990 American College of Rheumatology (ACR)

---

[12] *Molina*, 674 F.3d at 1111.

[13] *Id.* at 1115 (cleaned up).

[14] *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)).

[15] *See* Soc. Sec. Ruling (SSR) 12-2p: Titles II and XVI: Evaluation of Fibromyalgia; *See generally, Revels*, 874 F.3d at 656–57; *Benecke*, 379 F.3d 587.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria.

Under the 1990 criteria, a person suffers from fibromyalgia if: (1) he has widespread pain that has lasted at least three months (acknowledging that pain may "fluctuate in intensity and may not always be present"); (2) he has tenderness in at least eleven of eighteen specified points on his body; and (3) there is evidence that other disorders are not accounting for the pain.[16] Under the 2010 criteria, a person suffers from fibromyalgia if: (1) he has widespread pain that has lasted at least three months (again, acknowledging that pain may "fluctuate in intensity and may not always be present"); (2) he has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.[17]

Here, the ALJ supported his finding that the onset date for fibromyalgia was July 3, 2017, with the following:[18]

---

[16] SSR 12-2p at *2–3.

[17] *Id.* at *3.

[18] AR 27.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

> On July 3, 2017, James Byrd, M.D., a rheumatologist, performed a physical examination of the claimant and reported he had greater than 11 tender points with no overt evidence of active synovitis (Ex. B-11F, p.2). Dr. Byrd noted that fibromyalgia was likely, but wanted additional testing in light of the claimant's HIV. These findings, as well as the subsequent findings in the record, establish fibromyalgia as a severe medically determinable impairment beginning on July 3, 2017.

The ALJ also found that once Plaintiff "began to follow with Dr. Byrd, a rheumatologist, his complaints of ongoing pain and limitation began to be more consistent. . . . Dr. Byrd's subsequent workup of [Plaintiff] confirmed [the diagnosis of fibromyalgia] and demonstrated the consistent nature of [Plaintiff's] complaints of pain after July 3, 2017."[19] And that "[t]here [was] no evidence of fibromyalgia from before July 3, 2017."[20]

Yet, a longitudinal review of the medical record clearly establishes that Plaintiff consistently reported pain in his back and legs since the alleged onset date of April 27, 2014, notwithstanding injections, radiofrequency ablations, and other treatments aimed at reducing his pain.[21] Plaintiff's primary and orthopedic

---

[19] AR 27.

[20] AR 25.

[21] *See, e.g.*, AR 1046 (May 2014: reporting continued back pain as spinal injections were not providing relief); AR 877 (June 2014: reporting a history of constant lumbar pain that was not alleviated by prior radiofrequency ablations and also left-sided leg pain); AR 859–62 (Feb. 2015: reporting continued lumbar pain and decision to attempt another radiofrequency ablation to relieve pain); AR 1038–44 (July 2015: reporting continued nerve pain, observed with lumbar tenderness, and

providers sought to find the source of Plaintiff's pain but were unable to discern a cause, as imaging was largely normal and injections and ablations did not offer sustained long-term relief. As a result, Plaintiff's orthopedist ultimately recommended in April 2017 that Plaintiff be referred to a rheumatologist.[22] Plaintiff was then referred to Dr. Byrd, a rheumatologist, who first saw him on July 3, 2017, and continued with his care through 2018, when Plaintiff transferred his fibromyalgia care to a local pain management clinic, as Dr. Byrd's office was located approximately two-and-a-half hours away, a drive which was difficult for Plaintiff due to his fibromyalgia.[23]

---

being referred to orthopedist to seek further answers to source of pain); AR 844–47 (reporting shooting pain in the lumbar region even with pain medicines and tenderness in the right lower facets); AR 836–37 (Feb. 2016: lumbar pain and radicular pain and weakness in left leg, positive straight leg raise, and reduced range of movement); AR 822–25 (reporting bilateral low back pain and right leg pain, observed with a right antalgic gait, lumbar tenderness, and positive straight leg raise on the right).

[22] AR 1539–43 ("Given his chronic pain it may benefit for the patient to be referred to rheumatology to rule out fibromyalgia or other autoimmune disorder."). *See also* AR 975.

[23] AR 1119–27, 1472–1500. *See also* AR 168–69, 1128–29, 1136–37.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

Contrary to the ALJ's finding that Plaintiff's pain complaints became more consistent after July 3, 2017, the record reflects that Plaintiff consistently complained of back and leg pain and other related fibromyalgia symptoms, such as fatigue, depression, sleeping problems, and anxiety, and sought treatment for these symptoms since the alleged onset date in April 2014.[24] The ALJ erred therefore by not considering the 2010 criteria for fibromyalgia, which does not require positive tender points.

The ALJ also erred by focusing on Dr. Byrd's initial evaluation date. Once the ALJ found that Plaintiff was diagnosed with fibromyalgia and that fibromyalgia was a medically determinable impairment, the ALJ was to assess the onset date for this nontraumatic condition by considering Plaintiff's alleged onset date, work history, medical evidence, and other evidence of record, not simply the

14

15

16

17

18

19

20

21

22

23

---

[24] *See, e.g.*, 656–57 (Apr. 2014: finding Plaintiff's pain to result from a chronic illness with severe exacerbation and/or progression); AR 799 (June 2014: reporting isolating and not sleeping well); AR 789 (Nov. 2014: reporting not sleeping well); AR 861 (Feb. 2015: reduced range of lumbar motion, tenderness); AR 769 (March 2015: constant ache between shoulder blades and reduced back range of motion); AR 837 (Feb. 2016: muscle weakness and reduced range of motion); AR 832 (Sept. 2016: reporting nightly muscle spasms); AR 826 (Nov. 2016: right antalgic gait, tenderness in lumbar, and increased back pain with extension and rotation).

date on which Plaintiff had his initial positive tender point evaluation by Dr. Byrd.[25]

Here, consistent with the longitudinal medical record, Dr. Byrd opined, after examining Plaintiff and reviewing medical records and Plaintiff's history, that Plaintiff's limitations resulting from his fibromyalgia existed before July 3, 2017, and in fact since 2010.[26] Likewise, the testifying medical expert Dr. Morse opined that Plaintiff experienced his limitations (albeit nonlimiting in Dr. Morse's opinion) since the alleged disability onset date.[27] And as the ALJ recognized, Dr. Cooper opined that Plaintiff would have unreliable attendance due to his somatic impairment (i.e., focus on pain) and other mental health impairments.

Accordingly, given the ALJ's findings that Plaintiff suffered from fibromyalgia and that it was a severe impairment, the record clearly establishes that Plaintiff suffered from fibromyalgia and its related symptoms since the alleged onset date of April 27, 2014, not since July 3, 2017.[28] The ALJ erred. This error

---

[25] *See* SSR 83-20 (rescinded and replaced by SSR 18-1p, 10/2/18).

[26] AR 1129, 1137 (opining that the absenteeism limitations resulting from fibromyalgia existed since January 2010).

[27] AR 104–07.

[28] SSR 83-20: Titles II and XVI: Onset Date of Disability (rescinded and replaced by SSR 18-1p: Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims, eff. 10/2/18).

was consequential because Plaintiff would be unable to maintain adequate attendance in the workplace when his fibromyalgia-related limitations are considered.[29]

**B.    Remand for an award of benefits.**

The decision whether to remand a case for additional evidence or to award benefits is within the Court's discretion.[30] Absent clear evidence from the record that a claimant is entitled to benefits, remand for further proceedings is the usual course.[31]

As the ALJ found, Plaintiff suffered from fibromyalgia and several other severe impairments and these impairments, when considered cumulatively, caused Plaintiff to miss at least two workdays per month. Accordingly, when Plaintiff's fibromyalgia is properly considered to have an onset date of April 27, 2014, Plaintiff was unable to sustain work from that date, not the ALJ's later date of July 3, 2017.

---

[29] AR 206–07.

[30] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[31] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Given the ALJ's impairment and RFC findings, the medical record supporting the alleged onset date for fibromyalgia, and the vocational expert's testimony, this record does not require further proceedings. On remand, Plaintiff is to be awarded benefits for the additional time period of April 27, 2014, to July 2, 2017.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 24**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 30**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING IN PART and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits for the period between April 27, 2014, to July 2, 2017.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 12th day of January 2022.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12